McCALEB, Justice.
This is a suit for cancellation of a mineral'lease for failure to make timely payment of the delay rental.
On September 15th 1947, plaintiff granted to, Lawrence Potter an oil and gas lease covering 95.48 acres of land owned by him in Webster Parish. The lease had a primary term of five years and provided, among other things, that it would terminate, if drilling operations were not commenced within one' year, “ * * * unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Springhill Bank and Tr. Co., Springhill, *277 Louisiana, * * * the sum of One ($1.00). Dollar per acre * * * ” rental for the privilege of deferring commencement of drilling operations during a period of 12 months and that, in like manner and upon like payments annually, the commencement of drilling operations could be further deferred for successive periods of 12 months each during the primary term.
On September 26th 1947, Lawrence Potter transferred his interest in the lease to H. C. Hoffert and L. D. Potter, residents of Racine, Wisconsin, retaining for himself a %2 overriding royalty.[1]. On the same day, he conveyed this royalty interest to Mrs. Avis Harper Herrick of Webster Parish who, on March 19th 1949, sold one-half of her interest to C. H. Williams of Caddo Parish.
No drilling operations were ever commenced on the leased property but the leasé was nonetheless kept in force and effect until September 15th 1950 by the timely payment of the annual delay rentals provided for therein. At about 8:30 a. m. of that day, Lawrence Potter, acting as agent of the sublessees Hoffert and Potter, wired, via Western Union Telegraph Company, the; rental payment of $95.48 to Springhill Bank & Trust Company for the credit of plaintiff. This money was received by the Western Union office- at Springhill about two hours after it was sent. However, instead of making an immediate delivery of it, the operator of that office advised the bank by telephone that, whereas the money had arrived, she could not deliver it then for the reason that the telegram of transmittal did not show the point of its origin and that this information was essential, under rules of the company, before making payment of money orders. As a result, the money did not reach the bank on September 15th because it was after banking hours at the time the Western Union operator at Springhill was able to ascertain the point of origin of the funds. She therefore delivered the money to the bank on the next day, Saturday, September 16th, and the funds were credited to plaintiff’s account on the following Monday, September 18th 1950.[2] Plaintiff, however, refused to accept the credit, taking the position that the deposit came too late. This suit followed, in which Potter, *279 the original lessee,[3] Hoffert and L. D. Potter, the nonresident sublessees and Mrs. Herrick and Williams, the royalty owners, are made parties defendant.
Mrs. Herrick and Williams did not defend the suit and judgment against them was taken by default. Hoffert and L. D. Potter, the sublessees, appearing through a curator ad hoc, filed answer denying plaintiff’s claim for a forfeiture. They contended that the delay rental had been sent by their agent, Lawrence Potter, in ample time to reach the bank on September 15th 1950; that the failure to deliver it on that day was due entirely to the fault of Western Union Telegraph Company and that, under the circumstances, it would be inequitable for the court to declare a forfeiture of the lease.
After a hearing on this issue, there was judgment in favor of plaintiff and against all defendants other than Lawrence Potter. The curator ad hoc for Hoffert and L. D. Potter has prosecuted this appeal from the adverse decision.
Plaintiff’s position, in the lower court and here, is that the lease terminated upon the failure of the lessee to deliver the delay rental to the bank on or before September 15th 1950 and that the fact that the money would have been delivered in time, but for the negligence of the Telegraph Company, is unavailing to the defense as the Court may not resort to equity when there is express law — the contract of the parties, see Articles 1901 and 1945, LSA-Civil Code — governing the issue.
Plaintiff’s postulation conforms with the above cited codal articles and is fully supported by the jurisprudence in matters involving mineral leases providing for forfeiture or termination of the contract in the event the delay rentals are not delivered to the lessor or his agent on or before the day specified in the contract. See Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 793, 44 So. 481; Pure Oil Operating Co. v. Gulf Refining Co., 143 La. 284, 78 So. 560 and Wilder v. Norman, 147 La. 413, 85 So. 59. Considerations of equity are not admissible for the determination of contractual rights clearly expressed; resort may be had to natural law and reason only where positive law is silent. Article 21, LSA-Civil Code.
On the other hand, the contract in the case at bar, unlike the leases considered in the authorities above cited, does not evince that it was the desire of the parties that the lease would ipso facto terminate in case the delay rentals were not delivered to the lessor or the bank on or before their *281 due date. Indeed, the paragraph of the lease in the instant case providing for a continuance of the contract in force by payment of delay rentals during its primary term, after specifying for payment ■of such rentals to the lessor or the Spring-hill Bank on or before the anniversary date ■of the lease, contains the following sentence :
“The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to lessor or • to said bank on or before such date of payment(Italics ours).
Thus, it is clearly expressed that the mailing by the lessee of his check or draft on or before the due date of the delay rental suffices and is to be considered as effectively discharging the requirement that such rental be paid on or before the anniversary date of the contract. And it cannot be doubted that, had the sublessees placed their check or draft in the mails on September 15th 1950, a forfeiture would have been averted even though the payment did not reach the lessor or the bank until a later date. But, since the funds were not mailed, the question arises whether the use of any other reliable agency for their delivery was permissible under the contract.
We believe that it was. When the parties provided that the deposit of the rentals in the mails on or before their due date was a compliance with the contract, Lhey indicated their intention, we think, that forfeiture of the lease would not ensue in the event of delay in the delivery of the payment occasioned by the negligence of the transmitting agency, or from other causes not attributable to the lessee. And the fact that the parties- designated the mails as the transmitting agency did not, in our view, necessarily exclude the use of another agency of equal reliability as, obviously, the important circumstance for which the parties was providing was the timely placing of the funds into safe hands for delivery to the lessor in the ordinary course of events and not the particular mode of transmission.
Consequently, we rule that the delivery by Potter of the money to the Western Union Telegraph Company on September 15th 1950 constituted a fulfillment of the lease contract notwithstanding that the payment did not reach the bank until September 16th or a later date.
The judgment appealed from is reversed and plaintiff’s suit is dismissed at his costs.

. Although this instrument is styled an assignment, it is in reality a sublease forasmuch as Lawrence Potter retained an overriding royalty. See Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149 and cases there cited.

. This is the testimony of the Western Union operator, which is denied by one of the hank officials who says that the money was delivered by mail on Monday, September 18th 1950. This divergence in the evidence is of no importance to the ; decision, as plaintiff’s contention is that it was incumbent upon the lessee to deliver the payment to the bank on or before September 15th 1950, or suffer a’ forfeiture.

. Lawrence Potter filed an exception of misjoinder to plaintiff’s petition on the ground that he, having transferred all his rights under the lease, was without interest in the litigation. It does not appear that this exception was formally fendant was not cast below, the matter passed on by the judge but, as this deis immaterial.